JERRY E. KOZAK ET AL., APPELLANTS, v. STATE OF NEBRASKA,
GAME AND PARKS COMMISSION, APPELLEE.
203 N. W. 2d 516

Filed January 19, 1973. No. 38525.

Donald E. Benton of Witte & Donahue, for appellants.

Herman Ginsburg of Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellee..

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This is an appeal from the sustaining of appellee's motion for a summary judgment dismissing the ejectment action filed by the appellants and overruling appellants' motion for summary judgment. We affirm.

In 1886, the Chicago, Kansas and Nebraska Railway Company extended its right-of-way through southeastern Nebraska in Pawnee and Gage counties. The railroad purchased part of the right-of-way and the remainder was condemned. The right-of-way, consisting of 14.13 acres taken out of the south half of Section 3, Township 3, Range 8, Gage County, Nebraska, was condemned. The property involved herein is that por-

tion taken out of the southwest quarter of Section 3. The Chicago, Rock Island and Pacific Railroad Company succeeded the Chicago, Kansas and Nebraska Railway Company, and used the land for railway purposes until September 1968, when it conveyed all its right-of-way by deed to the State of Nebraska, Game and Parks Commission.

At the time of the condemnation, L. L. Kirby was the owner of Section 3. Thereafter, on August 27, 1894, said L. L. Kirby conveyed the entire section "subject to the right of way aforesaid" by deed to James H. Kirby and Justus A. Kirby. Subsequently, Justus A. Kirby acquired his cotenant's interest and became the owner of the entire section " 'subject to the right of way of C. K. and N. Railway across said premises.' " Thereafter, Justus A. Kirby conveyed the southwest quarter of Section 3 to Joseph Kozak " 'subject to right of way heretofore granted to C. R. I. and P. R. R. Co.' " Thereafter, Joseph Kozak and wife conveyed the southwest quarter to Mary Kozak with no reference to the railroad right-of-way. By deed dated July 9, 1945, Mary Kozak and her husband conveyed the same property to Ladd J. Hubka, but this deed contained the following "except the railroad." This deed further specified the amount of land conveyed was 154 acres. Thereafter, Ladd J. Hubka and wife conveyed the property to Jerry E. Kozak and Julia Kozak, husband and wife, by deed again containing the following "except railroad right of way."

This action is one for ejectment so there is no burden on the defendant to show title, but the plaintiffs must show title in themselves. They cannot rely upon any weakness in the defendant's title. The rule in this state is enunciated in Reams v. Sinclair (1911), 88 Neb. 738, 130 N. W. 562: "* * * the plaintiff in ejectment must prevail, if at all, upon the strength of his own title, and not upon the weakness of his adversary's."

The parties stipulated that for the purpose of this

action the defendant claims ownership of the land involved herein and the right to possession of the same. In Runkle v. Welty (1907), 78 Neb. 571, 111 N. W. 463, this court held: "In an action of ejectment, when the plaintiff's testimony shows defendant in possession of the disputed lands under a claim of ownership, plaintiff must then recover on the superiority of his title, and, if he relies on a record or paper title, he must show a regular chain of title from the government, or from some grantor in possession, or from a common source from which each of the litigants claims."

Appellants admit that the deed from Mary Kozak and husband to Ladd J. Hubka contained the following description: "* * * to-wit: The SW¼ except the railroad, of Section 3, Township 3, Range 8, Gage County, Nebraska, 154 acres, more or less." They further admit that the deed from Ladd J. Hubka and wife to Jerry E. Kozak and Julia Kozak contained the following description: " 'The SW¼, except railroad right of way, Section 3, Township 3, Range 8, Gage County, Nebraska.' " Appellants further admit that by deed dated September 20, 1968, the Chicago, Rock Island and Pacific Railroad Company conveyed to State of Nebraska, Game and Parks Commission, the real estate involved herein, as follows: " 'All of grantor's abandoned railroad right of way described as being in the SW¼ of Section 3, Township 3, Range 8, Gage County, Nebraska, * * *.' " Appellants further admit that by deed dated June 19, 1969, Jerry E. Kozak and Julia Kozak, husband and wife, purported to convey to Julia Kozak the "SW¼ of said Section 3, Township 3, Range 8, Gage County, Nebraska."

It is to be noted that as described above, from the first conveyance of the southwest quarter, the conveyance has been subject to or excepts the railroad right-of-way. We interpret this language in the light of Elrod v. Heirs, Devisees, etc. (1952), 156 Neb. 269, 55 N. W. 2d 673, in which we said: " 'An exception is

said to be a withdrawal from the operation of the grant, of some part of the thing granted; while a reservation is of some new thing issuing out of what is granted. Thus, where real estate is granted, a portion thereof may be excepted from the terms of the conveyance, * * *. If the exception be valid, the title to the thing excepted remains in the grantor, the same as if no grant had been made. * * * an exception in a deed is nothing more than a qualification, by which some part of the estate is not conveyed, which would have passed to the grantee but for the exception.' * * *

"In Restatement, Property, § 27, p. 80, it is said concerning an exception that: '* * * The effect of an exception is to exclude from the operation of the conveyence the interest specified and it remains in the conveyor unaffected by the conveyance.' "

The rule is thus summarized in 23 Am. Jur. 2d, Deeds, § 268, p. 303: "A right or interest reserved in a duly recorded conveyance will be effective as against all who deraign title through the grantee, although the reservation is not expressed in subsequent deeds. Similarly, the fact that subsequent deeds contain no language showing exceptions made in a former deed within the chain of title does not abrogate or destroy such exceptions."

Appellants premise their action herein on their contention that the railroad acquired only an easement by condemnation, and not fee title. It is not necessary for us to consider the nature of the interest acquired by condemnation. If it was less than a fee interest, applying the rule in Elrod v. Heirs, Devisees, etc., *supra*, appellants have not established sufficient title in themselves to maintain this action. The ruling of the trial court was correct for the reason that appellants must recover on the strength of their own title, and not on any apparent weakness that may exist in the title of the State of Nebraska, Game and Parks Commission.

AFFIRMED.

SMITH, J., participating on briefs.

WHITE, C. J., dissenting.

I would reverse. It is certainly true, as the majority holds, that the plaintiff in an ejectment action must recover, if at all, on the strength of his own title rather than the weakness of his adversary's title. But I would hold that the plaintiffs herein have sufficient title to the disputed strip to prevail, having acquired that title as the successors in interest to the fee simple formerly held by Mary Kozak.

When the C., K. & N. Railway condemned the land in question in 1886, it thereby acquired a mere easement, and the fee simple title remained in the original owner, L. L. Kirby. See, Roberts v. Sioux City & Pacific R.R. Co., 73 Neb. 8, 102 N. W. 60 (1905). The continuity of fee title to the quarter is thereafter clearly unbroken until the deed here in controversy was executed. That deed, from Mary Kozak, granted to Ladd J. Hubka "The SW¼ except the railroad * * * 154 acres, more or less." The majority holds that the fee title to the land underlying the right-of-way did not pass by this conveyance. I would hold that it did.

To begin with, one must inquire into the probable intent of the grantor, Mary Kozak. It cannot seriously be contended that, in conveying the quarter, she purposely withheld from her grantee the irregular strip of land on which the railroad had its track. In Barker v. Lashbrook, 128 Kan. 595, 279 P. 12 (1929), the court construed a deed which conveyed 120 acres "Less one acre in southeast corner for school purposes and 3.81 acres taken by the Kansas City, Wyandotte & Northwestern Railway, containing 117.19 acres, more or less." In holding that this language was sufficient to vest fee title to the entire 120 acres in the grantee the court said: "A reservation is always construed more strictly than a grant * * * and it is difficult to conclude that businesslike people, able to own, sell and buy land, could reasonably have had in mind, at the time of the sale and purchase the leaving of a long, narrow strip of

land through the 120-acre tract that was to remain the absolute property of the grantor in the happening of a very possible contingency." Id. at 598.

Similarly, it cannot have been the intention of the grantee, Ladd J. Hubka, to accept such a tract. In Shell Petroleum Corp. v. Ward, 100 F. 2d 778 (5th Cir., 1939), the court was presented with a deed which by its terms conveyed "* * * 162.00 acres of land save and except therefrom 5.6 acres taken up by the rights of way of the Neches Canal Company lateral, making 156.4 acres herein and hereby conveyed." Holding that this conveyed the entire 162 acres the court said: "If construed as appellees would have it, a result both unreasonable and clearly unintended would have been produced. For it is inconceivable that Gregory, plaintiffs' grantee, would have bought a tract of land split into two tracts by a small narrow strip * * *. If construed as appellant contends it should be, every part of the deed would be harmonized and reconciled, and a result would be produced both reasonable and without doubt, in accordance with what the parties to the deed intended." Id. at 780.

The construction of such language so as to except from the conveyance a strip of land such as that involved here is not only contrary to the probable intent of the parties, but also violates public policy. As far back as 1895 Justice Taft said in Paine v. Consumers' Forwarding & Storage Co., 71 F. 626, (6th Cir., 1895): "The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases."

In Bowers v. Atchison, Topeka & Santa Fe Ry. Co., 119 Kan. 202, 237 P. 913, the court noted: "Experience

revealed that separate ownership of long, narrow strips of land distinct from the territory adjoining on each side was prolific of private dispute and public disturbance, and public policy became an important factor in the interpretation. Therefore it became settled doctrine that a deed of land abutting on a road passes a moiety of the road, unless intention not to do so be clearly indicated."

In short, courts have chosen, whether for reasons of public policy or because of the probable intent of the parties, to construe these types of clauses not as reservations, but as limitations. Jennings v. Amerada Petroleum Corp., 179 Okla. 561, 66 P. 2d 1069 (1937). In cases with language seemingly far more clear than that here in question courts have nonetheless held that the grantor has parted with the entire estate. The additional language is recognized as merely that of acknowledgment of a prior estate. As to the specification of a lesser acreage (in this case, 154 rather than 160) the court in Barker v. Lashbrook, *supra,* pointed out that: "The most apparent purpose of such statement of acreage excepted for the purpose named and statement of acres remaining was to *protect the grantor against the warranties of the deed* and to indicate that the railroad held the dominant estate to the three acres and she only the servient estate thereto, leaving only one hundred and seventeen acres free from a dominant right of the railroad company." (Emphasis supplied.) Cases reaching similar results are numerous. See, Penn v. Holland (Tex. Civ. App., 1937), 105 S. W. 2d 351, where the deed provided: "* * * save and except three (3) acres of land out of said tract, the same having been conveyed by me to the Houston Galveston Electric Railway Company."

The same arguments apply, a fortiori, to the language contained in the plaintiffs' deed from Ladd J. Hubka. It grants to them "The SW ¼, except railroad right of way." This language clearly manifests no intent on

the part of the grantor to reserve the servient estate. Rather it conveys the fee, acknowledging a dominant estate in the railroad.

Thus in September of 1968 the state of the title to the quarter section here in controversy was: Fee simple in Jerry and Julia Kozak (grantees of Ladd J. Hubka) subject to a right-of-way in the Rock Island Railroad (successor to the C., K. & N.). When, on September 20, 1968 the Rock Island attempted to convey its right-of-way to the Game and Parks Commission, the right-of-way immediately reverted to the Kozaks and merged with their fee. If a railroad attempts to alienate such a right-of-way for any purpose other than railroad operation the right at once reverts to the owner of the servient estate. Roberts v. Sioux City & Pacific R. R. Co., *supra.* Such reversion is expressly not subject to the statutes abolishing rights of reverter and similar future interests. § 76-2,104, R. R. S. 1943. Therefore, subsequent to September 20, 1968, the entire fee title was vested in the Kozaks, subject to no prior estates or rights. Their title being good, they should prevail.

BOSLAUGH and NEWTON, JJ., join in this dissent.